UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

TYJUAN TURNER,

                                                                      Plaintiff,

                                         -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
OFFICER DUDLEY EWALD, shield # 17310,
SERGEANT LUKE DENESOPOLIS, shield # 392, JOHN
DOES 1-3,

                                                                    Defendants.

**COMPLAINT**

12 Civ. 4427 (BSJ)

Jury Trial Demanded

------------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

      1.     Plaintiff brings this civil rights action against the City of New York and several New York City Police Officers alleging that, on December 1, 2011, defendants violated his rights under 42 U.S.C. § 1983, the First, Fourth and Sixth Amendments to the United States Constitution and New York state law by unlawfully searching his automobile, retaliating against him for engaging in free speech, using unreasonable force on him, falsely arresting him for possession of marijuana, illegally strip searching him, denying him a fair trial and maliciously prosecuting him.  The false charge was dismissed on April 23, 2012 on the ground that plaintiff was denied a speedy trial.  Plaintiff seeks compensatory and punitive damages, attorney's fees and costs and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

      2.     This action is brought pursuant to 42 U.S.C. § 1983 and the First, Fourth and Sixth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

3. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide his New York state law claims of false arrest, assault, battery, malicious prosecution and vicarious liability which form part of the same case and controversy as his federal claims under Article III of the United States Constitution.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because the City of New York resides in and is subject to personal jurisdiction in this District and because plaintiff's *Monell* claim is based on acts and omissions that occurred in this District at One Police Plaza, the Internal Affairs Bureau and the Office of the Civilian Complaint Review Board.

## NOTICE OF CLAIM

5. With respect to plaintiff's state law claims, notices of claim were duly filed with the City within 90 days of the arrest of plaintiff and the dismissal of the criminal case, more than 30 days have elapsed since such filing and the City has not offered to settle plaintiff's state law claims.

## JURY TRIAL

6. Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## PARTIES

7. Plaintiff is a United States citizen.

8. The City of New York is a municipal corporation organized under the laws of the State of New York.

9. The individual defendants are members of the New York City Police Department ("NYPD"). Defendants were acting under color of state law and in their capacities as members of the NYPD at all relevant times. Defendants are liable for directly participating in

the unlawful acts described herein and for failing to intervene to protect plaintiff from unconstitutional conduct. The defendants are sued in their individual capacities.

## STATEMENT OF FACTS

10. During the evening of December 1, 2011, plaintiff was lawfully driving his automobile in Brooklyn.

11. Plaintiff's friend Derek Cornelius was a passenger in the car.

12. Plaintiff was driving to pick-up his cousin, Jerome Turner, to take Turner home.

13. When plaintiff arrived at 35 Winthrop Street to pick-up Turner, Officer Dudley Ewald and Sergeant Luke Denesopolis and other officers approached and seized the vehicle.

14. Plaintiff engaged in free speech by complaining that defendants were harassing him without legal cause.

15. In response, one defendant entered the passenger side of the car without consent while Officer Ewald attempted with force and violence to pull plaintiff out of the car, but he was unsuccessful because plaintiff was wearing his seatbelt.

16. Sergeant Denesopolis told Ewald to "yank" plaintiff out of the car.

17. Defendants' use of force caused plaintiff pain and injury.

18. In response to plaintiff's exercise of free speech, Ewald handcuffed plaintiff excessively tight causing pain and bruising.

19. Plaintiff continued to object to the mistreatment and asked that the handcuffs be loosened, but defendants refused.

20. Officer Ewald and two other officers searched plaintiff's car without justification.

21. The two unidentified officers stated out loud that the car was "clear."

22. Plaintiff continued to complain about the mistreatment.

23. In response, Sergeant Denesopolis told another officer to "shut him up and put him in the van; I'm tired of hearing his mouth."

24. Sergeant Denesopolis stated that he was going to search the car and find "something."

25. Nothing illegal was in plaintiff's car, including marijuana.

26. Defendants formally arrested plaintiff for no reason and had him driven around for approximately one hour wearing tight handcuffs.

27. Defendants refused to loosen the cuffs.

28. Defendants had plaintiff taken to the 71st Precinct.

29. In the 71st Precinct, defendants arranged for plaintiff to be strip searched down to his underwear in retaliation for his exercise of free speech.

30. There was no basis to strip search plaintiff because plaintiff had not committed a crime, there was no reasonable suspicion to believe that plaintiff was hiding illegal items under his clothes, and plaintiff was not being placed in a general jail population at the precinct.

31. The strip search was conducted by a large black officer wearing plainclothes.

32. Defendants did not provide plaintiff with food or water in the precinct.

33. While plaintiff was held in the precinct, defendants, in retaliation for plaintiff's exercise of free speech, falsely charged plaintiff with possession of marijuana.

34. The next day, the defendants had plaintiff taken to Brooklyn Central Booking where he was held under horrendous conditions.

35. While plaintiff was held in Central Booking, defendants Ewald and Denesopolis, in retaliation for plaintiff's exercise of free speech, maliciously initiated a prosecution against plaintiff, or played a role in initiating a prosecution against plaintiff, by misrepresenting to prosecutors that they found a cigarette wrapper containing marijuana from the center console and a cigar wrapper containing marijuana from the ashtray in the vehicle.

36. Defendants Ewald and Denesopolis were instrumental in the creation of a criminal court complaint containing the false allegations, Ewald sign the complaint under oath, and Denesopolis signed a supporting deposition under oath.

37. Defendants' misrepresentations caused plaintiff to be arraigned in criminal court on December 3, 2011.

38. The judge released plaintiff on his own recognizance.

39. Plaintiff made several court appearances after his arraignment.

40. Plaintiff suffered from anxiety during the pendency of the criminal proceeding, especially when he had to appear in court.

41. The false charge was dismissed on April 23, 2012 on the ground that plaintiff was denied a speedy trial.

42. Plaintiff suffered damage as a result of defendants' actions. Plaintiff was incarcerated and suffered a loss of liberty, emotional distress, fear, anxiety, embarrassment,

5

humiliation and damage to his reputation.  Plaintiff did not received medical treatment for his physical injuries.

## FIRST CLAIM
### (UNLAWFUL AUTOMOBILE SEIZURE AND SEARCH)

43. Plaintiff repeats the foregoing allegations.

44. Defendants had no legal justification for seizing and searching plaintiff's automobile.

45. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for illegally seizing and searching plaintiff's automobile.

## SECOND CLAIM
### (VIOLATION OF RIGHT TO FREE SPEECH)

46. Plaintiff repeats the foregoing allegations.

47. Plaintiff's use of free speech during the incident was a motivating factor in defendants' decisions to violate his civil rights.

48. Accordingly, the defendants are liable to plaintiff under the First Amendment for violating his right to free speech.

## THIRD CLAIM
### (UNREASONABLE FORCE)

49. Plaintiff repeats the foregoing allegations.

50. Defendants' use of force upon plaintiff or their failure to intervene to stop the use of force was objectively unreasonable and caused plaintiff pain and bruising.

51. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for using unreasonable force on him.

## FOURTH CLAIM

### (FALSE ARREST)

52. Plaintiff repeats the foregoing allegations.

53. At all relevant times, plaintiff did not commit a crime or violation.

54. Despite plaintiff's innocence, the defendants arrested plaintiff or failed to intervene to prevent his false arrest.

55. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for false arrest.

## FIFTH CLAIM

### (ILLEGAL STRIP SEARCH)

56. Plaintiff repeats the foregoing allegations.

57. Defendants' strip search of plaintiff was illegal because plaintiff had not committed a crime, there was no reasonable suspicion to believe that plaintiff was hiding illegal items under his clothes, and plaintiff was not being placed in a general jail population at the precinct.

58. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for illegally strip searching him.

## SIXTH CLAIM

### (DENIAL OF A FAIR TRIAL)

59. Plaintiff repeats the foregoing allegations.

60. Defendants' misrepresentations to prosecutors deprived plaintiff of liberty because he was incarcerated and required to make court appearances after the misrepresentations were made.

61. Accordingly, the defendants are liable to plaintiff under the Sixth Amendment for denying him a fair trial.

## SEVENTH CLAIM

### (MALICIOUS PROSECUTION)

62. Plaintiff repeats the foregoing allegations.

63. Defendants maliciously misrepresented to prosecutors that plaintiff had committed a crime and initiated a prosecution against him or played a role in initiating a prosecution against him.

64. Defendants' misrepresentations deprived plaintiff of liberty because he was required to appear in court several times after his arraignment.

65. The criminal case filed against plaintiff was ultimately dismissed.

66. Accordingly, the defendants are liable to plaintiff under the Fourth Amendment for malicious prosecution.

## EIGHTH CLAIM

### (FAILURE TO INTERVENE)

67. Plaintiff repeats the foregoing allegations.

68. Defendants had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights, but they failed to intervene.

69. Accordingly, the defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's constitutional rights.

## NINTH CLAIM

### (*MONELL* CLAIM AGAINST THE CITY OF NEW YORK)

70. Plaintiff repeats the foregoing allegations.

71. The City of New York is a "person" within the meaning of 42 U.S.C. § 1983.

72. The City of New York, through a policy, practice or custom, directly caused the constitutional violations suffered by plaintiff.

73. Upon information and belief, the City of New York, at all relevant times, was aware that the defendants and other members of the NYPD are unfit officers who have previously committed acts similar to those alleged herein, have a propensity for unconstitutional conduct and/or have been inadequately trained.

74. In addition to frequently violating the civil rights of countless residents of New York City, numerous members of the NYPD commit crimes. Officers have been arrested and convicted of such crimes as planting evidence on suspects, falsifying police reports, perjury, corruption, theft, selling narcotics, smuggling firearms, robbery, fixing tickets, driving under the influence of alcohol, vehicular homicide, assault and domestic violence. In fact, former NYPD Commissioner Bernard Kerik was convicted of corruption-related crimes in federal and state court and served time in federal prison. In 2011, Brooklyn South narcotics officer Jerry Bowens was convicted of murder and attempted murder in Supreme Court, Kings County, while under indictment for corruption and is presently serving a life sentence. In 2011, Police Officer William Eiseman and his subordinate Police Officer Michael Carsey were convicted of felonies in Supreme Court, New York County, for lying under oath, filing false information to obtain search warrants and performing illegal searches of vehicles and apartments. On March 27, 2012, New York City Police Officer Michael Pena was convicted in Supreme Court, New York County, of sexually assaulting a woman at gunpoint and is presently serving a sentence of 75 years to life.

75. In October 2011, former Brooklyn South narcotics officer Jason Arbeeny was convicted in New York Supreme Court, Kings County, of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

76. In October 2011, former Brooklyn South narcotics officer Jason Arbeeny was convicted in New York Supreme Court, Kings County, of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

77. One federal court has recognized that there is widespread falsification by members of the NYPD. In *Colon v. City of New York,* Nos. 09 CV 8, 09 CV 9 (JBW), 2009 WL 4263362 (E.D.N.Y. November 25, 2009), the court stated that an "[in]formal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department."

78. A second federal court held in *Floyd v. City of New York*, 08 Civ. 1034 (S.D.N.Y. May 16, 2012) that the City of New York's and the NYPD's "cavalier attitude towards the prospect of a 'widespread practice of suspicionless stops' displays a deeply troubling apathy towards New Yorkers' most fundamental constitutional rights."

79. Despite the above, the City exercised deliberate indifference by failing to take remedial action. The City failed to properly train, retrain, supervise, discipline and monitor the defendants and other officers like them.

80. The City's failure to act resulted in the violation of plaintiff's constitutional rights as described herein.

## TENTH CLAIM

### (FALSE ARREST UNDER STATE LAW)

81. Plaintiff repeats the foregoing allegations.

82. At all relevant times, plaintiff did not commit a crime or violation.

83. Despite plaintiff's innocence, the defendants arrested plaintiff or failed to intervene to prevent his false arrest.

84. Accordingly, the individual defendants are liable to plaintiff under New York state law for false arrest.

## ELEVENTH CLAIM

### (ASSAULT)

85. Plaintiff repeats the foregoing allegations.

86. Defendants' force upon and strip search of plaintiff placed him in fear of imminent harmful and offensive physical contacts which injured him.

87. Accordingly, the defendants are liable to plaintiff under New York state law for assault.

## TWELFTH CLAIM

### (BATTERY)

88. Plaintiff repeats the foregoing allegations.

89. Defendants' force upon plaintiff constituted offensive and nonconsensual physical contacts which injured him.

90. Accordingly, the defendants are liable to plaintiff under New York state law for battery.

## THIRTEENTH CLAIM

### (MALICIOUS PROSECUTION UNDER STATE LAW)

91. Plaintiff repeats the foregoing allegations.

92. Defendants maliciously misrepresented to prosecutors that plaintiff had committed a crime and initiated a prosecution against him or played a role in initiating a prosecution against him.

93. The criminal case filed against plaintiff was ultimately dismissed.

94. Accordingly, the defendants are liable to plaintiff under New York state law for malicious prosecution.

## FOURTEENTH CLAIM

### (VICARIOUS LIABILITY CLAIM AGAINST CITY OF NEW YORK)

95. Plaintiff repeats the foregoing allegations.

96. The individual defendants were acting within the scope of their employment as members of the NYPD when they falsely arrested, assaulted, battered and maliciously prosecuted plaintiff.

12

97. Accordingly, the City of New York is vicariously liable to plaintiff under New York state law for false arrest, assault, battery and malicious prosecution.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

   a. Compensatory damages in an amount to be determined by a jury;

   b. Punitive damages in an amount to be determined by a jury;

   c. Attorney's fees and costs;

   d. Such other and further relief as the Court may deem just and proper.

DATED:   June 1, 2012

/s/
_____
RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1815
Brooklyn, New York 11242
(718) 624-9391

13